IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KWABENA KABAKA<br>      *Plaintiff*,<br><br>   v.<br><br>CITY OF PHILADELPHIA, et al.<br>      *Defendants*. | CIVIL ACTION<br>NO. 20-6174 |

**PAPPERT, J.**                                                                                         July 23, 2021

**<u>MEMORANDUM</u>**

Kwabena Kabaka sued the City of Philadelphia and ten John/Jane Doe police officers,[1] alleging violations of his constitutional rights under 42 U.S.C. § 1983 and certain common law violations by the Doe Defendants.  The City moves to dismiss his claims against it.  The Court grants the City's Motion because Kabaka's Amended Complaint does not sufficiently allege an underlying constitutional violation.

I

In December 2018, ten unidentified Philadelphia police officers "approached" Kabaka and took him into custody pursuant to an arrest warrant. (Am. Compl., ECF 4, ¶ 8.)  When he was arrested, unidentified "Defendants" handcuffed him behind his back and "unnecessarily and retributively jerked both of his hands upward with such force and ferocity that [Kabaka] felt immediate, sharp pains in both his left and right shoulders." (*Id.* ¶ 9.)  Kabaka's Amended Complaint provides no additional detail regarding the circumstances of his arrest.

---

[1]    To date, none of the John/Jane Doe officers have been identified or served.

1

Kabaka was taken to the 18th Police District and was "in significant pain" while he was there. (*Id.*) He was then "taken to State Road" and placed in a holding cell. (*Id.* ¶ 10.) After complaining of pain, he was taken to the medical unit where he received unspecified treatment. (*Id.*)

In Count II, his Section 1983 claim against the City, Kabaka broadly alleges he "sustained injuries including, but not limited to a collapsed lung, restraint of liberty and financial loss" "as a direct and proximate result of the active and/or passive conduct described" in his Amended Complaint." (*Id.* ¶ 24.) Elsewhere, he alleges he suffered "severe and disabling injuries to the bones, muscles, blood vessels, tissues, nerves and nervous system of his body, including but not limited to the wrists and shoulders . . . ." (*Id.* ¶ 16.) Kabaka states he sought medical assistance after his release from custody and still suffers from shoulder pain. (*Id.* ¶¶ 11-12.)

Kabaka alleges the City "has tolerated, encouraged and been deliberately indifferent to" a long list of generalized conduct, including police officers' "[u]njustified, unreasonable use of force . . ." (*Id.* ¶ 25.) He also maintains the City "has tolerated, encouraged and been deliberately indifferent to" a long list of "patterns, practices and customs" and "to the need for more or different training, supervision, investigation, or discipline" in areas including "[u]nlawful use of force . . . ." (*Id.* ¶ 26.) He alleges the City's deliberate indifference "to the need to discipline police officers," is evidenced by the Philadelphia Police Department's "ineffective" Internal Affairs Division. (*Id.* ¶ 29.) Citing a September 12, 2019 Philadelphia Inquirer article attached to his Amended Complaint, he claims the City failed "to train, supervise and discipline officers . . . ." (*Id.* ¶ 32; *see also* Am. Compl., ECF 4-1, Ex. A.) He alleges the City "has engaged in

2

secrecy to hide its pattern and practice of failure in addressing constitutional violations by its police officers," referencing an attached December 15, 2019 Philadelphia Inquirer article. (Am. Compl., ECF 4, ¶ 33; *see also* Am. Compl., ECF 4-1, Ex. B.) Kabaka then cites five additional Philadelphia Inquirer articles to support his contention that the City has not sufficiently addressed officer misconduct. (Am. Compl., ECF 4, ¶¶ 38-39; *see also* Am. Compl., ECF 4-1, Exs. C-G.) He does not allege any of the officers named in the cited articles were among the John/Jane Doe officers involved in his arrest.

II

The City moves to dismiss Kabaka's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To survive dismissal, Kabaka's Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It must include enough facts to "nudge" Kabaka's "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Case 2:20-cv-06174-GJP   Document 8   Filed 07/23/21   Page 4 of 7

III

To state a Section 1983 claim against the City, Kabaka must allege the City's policies or customs caused a constitutional violation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020) ("Pursuant to the Supreme Court's holding in *Monell*, a city is only liable under § 1983 for constitutional violations that are caused by its official policies and customs."). There must be an underlying constitutional violation before *Monell* liability can attach. *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."); *see also Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) ("The first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all.") (citations and internal quotations omitted).

Once he alleges a constitutional violation, Kabaka must "identify a custom or policy" and state "what exactly" it was. *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). He must also "demonstrat[e] an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).

A

Kabaka has not sufficiently alleged the required underlying constitutional violation. His claims against the City arise out of the excessive force he alleges the unidentified officers used against him during his arrest. "Whatever the source of law,

in analyzing an excessive force claim, a court must determine whether the force was objectively unreasonable in light of the facts and circumstances of each particular case."[2] *Lombardo v. City of St. Louis, Missouri*, 141 S. Ct. 2239, 2241 n.2 (2021) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (further citations and internal quotation omitted)). Whether force used was reasonable or unreasonable can be determined by considering: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

Kabaka alleges a single incident of force: when he was handcuffed during the execution of a search warrant and "defendants unnecessarily and retributively jerked both of his hands upward with such force and ferocity" that he felt "immediate sharp pains" in his shoulders. (Am. Compl., ECF 4, ¶ 8.) Kwabaka's Amended Complaint lacks any details about the circumstances of his arrest. He does not identify any of the arresting officers, the crime for which he was being arrested, where he was, whether others were present, whether he had access to a weapon or whether he resisted arrest. *See Graham v. Connor*, 490 U.S. 386, 396 (1989) (explaining considerations in the

---

[2] Kabaka alleges the City violated his rights under the Fourth and Fourteenth Amendments. (Am. Compl., ECF 4, ¶ 22.) "The Supreme Court has instructed that all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Davenport v. Borough of Homestead*, 870 F.3d 273, 278-79 (3d Cir. 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). In addition, "the Fourth Amendment always governs claims of unlawful arrest and pretrial detention when that detention occurs before the detainee's first appearance before a court." *DeLade v. Cargan*, 972 F.3d 207, 212 (3d Cir. 2020).

reasonableness inquiry may include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight"). The "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact . . . are not entitled to the same presumption." *Id.*

Even if Kabaka's single allegation of force is true, without more it is insufficient to show the use of force was unreasonable. His Amended "Complaint simply does not contain a full enough description of the relevant facts which could nudge his claim[ ] of excessive force over the line from conceivable to plausible." *Gillins v. Nothstein*, No. 19-5791, 2020 WL 4584034, at *4 (E.D. Pa. Aug. 10, 2020); *see Caldwell v. Beky*, No. 19-0214, 2019 WL 4855241, at *4 (E.D. Pa. Oct. 1, 2019) ("Without any allegations as to the circumstances of the encounter behind [an officer's] alleged misconduct, the Court is unable to plausibly infer that [the officer's] actions were objectively unreasonable.")*; Graham v. Rawley*, No. 14-6743, 2016 WL 7477756, at *8 (D.N.J. Dec. 29, 2016) (dismissing excessive force claims where the allegations did not show "what type of force was used on Plaintiff, whether the Officers had reason to believe the Plaintiff posed an immediate threat to their safety or had reason to believe that she was resisting arrest or attempting to flee"); *Bradley v. Jersey City Police Dep't*, No. 12-5236, 2013 WL 4606710, at *5 (D.N.J. Aug. 29, 2013) ("In the absence of a fuller factual description, and where the only harm Plaintiff is alleged to have suffered is the

6

discomfort of tight handcuffs, Plaintiff's conclusory characterization of the officers' use of force as excessive is insufficient to raise his right to relief above a 'speculative level.'"). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### B

Because Kabaka has not sufficiently alleged the required underlying constitutional violation, the Court need not consider whether he has alleged facts sufficient to show a City policy or custom consistent with *Monell*.

### IV

In civil rights cases, "courts must allow amendment, unless doing so would be inequitable or futile." *McCall v. City of Philadelphia*, 396 F. Supp. 3d 549, 563-64 (E.D. Pa. 2019) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Kabaka has already amended his Complaint once as of right in response to the City's initial Motion to Dismiss. If, consistent with this Memorandum and the requirements of *Monell*, Kabaka can allege enough facts to state a claim against the City, he may file a Second Amended Complaint on or before Monday, August 23, 2021.

An appropriate Order follows.

BY THE COURT:

 */s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.
