# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KWABENA KABAKA
                          *Plaintiff,*

            v.

CITY OF PHILADELPHIA, et al.
                          *Defendants.*

CIVIL ACTION
NO. 20-6174

**PAPPERT, J.**                                    **November 17, 2021**

## MEMORANDUM

When the Court granted the City of Philadelphia's second motion to dismiss
Kwabena Kabaka's claims, it granted him leave to file a Second Amended Complaint to
the extent he was able to "allege enough facts to state a claim against the City"
consistent with the requirements of *Monell v. Department of Social Services*, 436 U.S.
658, 691 (1978). (*See* ECF 8 at 7.) Kabaka filed a Second Amended Complaint (ECF
10) and in early September the City again moved to dismiss the claims against it,
arguing Kabaka still relies on "boilerplate and conclusory allegations" of deficient City
customs and fails to plausibly plead the underlying constitutional violation required to
pursue a municipal liability claim. (Def.'s Mem., ECF 11 at 1, 13-14.) Kabaka never
responded to the City's motion, which the Court grants.[1]

### I

Kabaka alleges ten unidentified Philadelphia police officers – the unserved

---

[1]     Even though Kabaka has not filed a response, the Court will analyze the City's motion on its
merits. *See Jones v. Unemployment Comp. Bd. of Review*, 381 F. App'x 187, 189 (3d Cir. 2010) ("[A]
Rule 12(b)(6) motion should not be granted without an analysis of the merits of the underlying
complaint notwithstanding local rules regarding the granting of unopposed motions.").

John/Jane Doe Defendants – approached him and took him into custody on December 5, 2018.  (Second Am. Compl., ECF 10, ¶ 8.)  He was arrested pursuant to a warrant, rather than in response to "the commission of a crime in progress[.]"  (*Id.* ¶¶ 8, 14.)  At the time, Kabaka was sixty-three years old, unarmed, "did not resist and posed no immediate threat of flight" or violence.  (*Id.* ¶¶ 13, 15-16.)  Defendants handcuffed him behind his back, "jerked both of his hands upward," causing him sharp pain in both shoulders, then transported him to the 18th Police District.  (*Id.* ¶ 9.)  After, he was "taken to State Road," where he complained of and received unspecified treatment for injuries.  (*Id.* ¶ 10.)

Kabaka alleges that "[a]s a direct and proximate result" of Defendants' conduct, he suffered "severe and disabling injuries to the bones, muscles, blood vessels, tissues, nerves and nervous system of his body," including his wrists and shoulder, and that the extent of his injuries is currently unknown.  (*Id.* ¶ 21.)  Additionally, he "sustained injuries including, but not limited to a collapsed lung, restraint of liberty and financial loss[.]"  (*Id.* ¶ 29.)  After his release from custody, he sought treatment and "still suffers from pain in his shoulders to this day."  (*Id.* ¶ 11-12.)

Kabaka broadly alleges the City has fostered a culture that is tolerant of police misconduct, including officers' "[u]njustified, unreasonable use of force . . . ."  (*Id.* ¶ 30.)  He contends the City "has tolerated, encouraged and been deliberately indifferent to" a long list of "patterns, practices and customs" and "to the need for more or different training, supervision, investigation, or disciplines" in areas including "[u]nlawful use of force . . . ."  (*Id.* ¶ 31.)  To bolster his allegations, Kabaka again cites several Philadelphia Inquirer articles written between 2019 and 2021 that detail alleged police

misconduct and the City's reported failures to address it. (*Id.* ¶¶ 32-33, 38-39; *see also* Second Am. Compl. ECF 10-1, Exs. A-G.)  Once again, Kabaka does not allege any of the officers named in the Inquirer articles were among the unidentified officers involved in his arrest.

## II

To survive the City's motion under Rule 12(b)(6), Kabaka's Second Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  He must allege enough facts to "nudge" his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Facially plausible claims plead "factual content that allows the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Well-pleaded factual allegations are entitled to the presumption of truth. *Id.* at 679.  "Conclusory assertions of fact and legal conclusions are not . . . ." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal citations omitted).

## III

To allege a viable Section 1983 claim against the City, Kabaka must allege his constitutional rights were violated by a City policy or custom.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020).  For *Monell* liability to attach, he must begin by pleading enough facts to establish an underlying constitutional violation.  *See Mulholland v. Gov't Cnty. Of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is not a

violation in the first place, there can be no derivative municipal claim.").  If Kabaka
sufficiently alleges a constitutional violation, he must also "identify a custom or policy,
and specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564
F.3d 636, 658 (3d Cir. 2009).  In addition, he must allege enough facts to show "an
'affirmative link' between the policy or custom and the particular constitutional
violation he alleges." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d. Cir.
2019) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

A

The Court previously dismissed Kabaka's First Amended Complaint because he
failed to sufficiently allege an underlying constitutional violation.  His Second Amended
Complaint adds a few facts not included in his Amended Complaint.  Kabaka was sixty-
three years old at the time of his arrest, which "was based on a warrant, not upon the
commission of a crime in progress," "[h]e was unarmed," and he "did not resist and
posed no immediate threat of flight" or violence. (Second Am. Compl., ECF 10, ¶¶ 13-
16.)[2]  His new allegations provide more detail about the circumstances surrounding his
arrest, but his overall description of the alleged incident still falls well short of alleging
the requisite underlying constitutional violation.

"Whatever the source of law, in analyzing an excessive force claim, a court must
determine whether the force was objectively unreasonable in light of the facts and
circumstances of each particular case." *Lombardo v. City of St. Louis, Missouri*, --- U.S.

---

[2]     The Court does not consider this allegation:  "The use of force against Mr. Kabaka, an
individual presumed innocent until proven guilty, was completely unnecessary and purely
retributive."  (Second Am. Compl. ¶ 17.)  It is a legal conclusion and not entitled to a presumption of
truth. *Schuchardt*, 839 F.3d at 347.

4

----, 141 S. Ct. 2239, 2241 n.2 (2021) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (further citations and internal quotation omitted)).

When considering whether Kabaka has alleged an unreasonable use of force, the Court can consider: "the relationship between the need for the use of force and the amount of force used; the extent of [his] injury; any effort . . . to temper or limit the amount of force [used]; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether [Kabaka] was actively resisting." *Kingsley*, 576 U.S. at 397; *see also Graham v. Connor*, 490 U.S. 386, 396 (1989) (explaining that reasonableness of the force used may depend on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight").

Kabaka's only allegation regarding the force used during his arrest is that "Defendants handcuffed [him] behind his back then unnecessarily and retributively jerked both of his hands upward with such force and ferocity that [he] felt immediate, sharp pains in both his left and right shoulders." (*Id.* ¶ 9.)  His Second Amended Complaint adds some context, like his age and that he did not possess a weapon, but his description of the arrest remains limited.  He still has not set forth "sufficient factual matter to render[] plausible on their face" his assertions that he did not resist, threaten flight or violence, or that there were no exigent circumstances present. *Schuchardt*, 839 F.3d at 347.  Kabaka does not allege whether other individuals were present, the crime underlying his arrest warrant, or any specifics about location where he was arrested.  He does not even describe any of his interactions with the arresting officers

(who remain unidentified) before the arrest.  He still makes no effort to tie his arrest to any of the officer misconduct reported in the Inquirer articles attached to his amended pleading.

Just because some Philadelphia police officers may have engaged in misconduct during other arrests does not mean that the officers who arrested Kabaka used excessive force.  More is required to "nudge" Kabaka's claim against the City "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  Given the lack of factual detail in the Second Amended Complaint, the Court still cannot draw a reasonable inference from Kabaka's allegations that the officers' alleged use of force was unreasonable.  *See Graham v. Rawley*, No. 14-6743, 2016 WL 7477756, at *8 (D.N.J. Dec. 29, 2016) (dismissing excessive force claims where the allegations did not show "what type of force was used on Plaintiff, whether the Officers had reason to believe the Plaintiff posed an immediate threat to their safety or had reason to believe that she was resisting arrest or attempting to flee"); *Bradley v. Jersey City Police Dep't*, No. 12-5236, 2013 WL 4606710, at *5 (D.N.J. Aug. 29, 2013) ("In the absence of a fuller factual description, and where the only harm Plaintiff is alleged to have suffered is the discomfort of tight handcuffs, Plaintiff's conclusory characterization of the officers' use of force as excessive is insufficient to raise his right to relief above a 'speculative level.'").

B

Whether or not a plaintiff seeks leave to amend, a district court considering a 12(b)(6) motion "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)

(citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  Amendment is futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  It would be futile to permit Kabaka, who is represented by counsel, to amend his claims a fourth time when he hasn't been able to get it right after three tries.  *See Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.").

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.